**LUZERNE COUNTY COMMUNITY COLLEGE ASSOCIATION OF HIGHER EDUCATION**

v.

**LUZERNE COUNTY COMMUNITY COLLEGE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided Jan. 4, 2007.

Kelly Ochreiter, Kingston, for appellant.

John G. Audi, Wilkes–Barre, for appellee.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge (P.), and FRIEDMAN, Judge.

OPINION BY Judge PELLEGRINI.

The Luzerne County Community College (College) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) denying its petition to review and vacate the Arbitrator's award to promote Dr. Murali Panen (Dr. Panen) to the rank of Associate Professor and finding that the Arbitrator's decision was rationally derived from the Collective Bargain Agreement (CBA).

The Luzerne County Community College Association of Higher Education (Association) and the College [1] are parties to a CBA which they entered into on September 1, 1999, to be effective through August 31, 2004. Relevant to this proceeding, Article VI of the CBA provides a grievance process allowing for a grievance to be filed by a faculty member, group of faculty members or the Association. In the first step, the grievant has 10 working days within the occurrence giving rise to the grievance or knowledge of the event to informally discuss the grievance with the dean or administrative supervisor. If that discussion fails to resolve the grievance, then the grievant proceeds to the next step in the process:

6.4 SECOND STEP

If the action taken at the First Step fails to resolve the grievance, the grievant may, within ten (10) working days after the discussion of the First Step, deliver a written appeal to the Office of the President and to the Faculty Association with a copy to the human resource office. The President or his/her designated representative shall, within ten (10) working days following the dated acknowledged receipt of such written appeal, deliver an answer to the grievant. A copy of this answer shall be delivered to the ASSOCIATION. **If a grievance is not responded to in writing by the President or his/her designee within the time frame prescribed in this Section, then said grievance will be deemed to be resolved in favor of the grievant and/or ASSOCIATION.** (Emphasis added.)

Dr. Panen was an Assistant Professor at the College and a member of the Association. After becoming aware that he was

1. The Association is an unincorporated association which is the exclusive bargaining representative of all faulty employees of the College, an educational institution located in Luzerne County.

not going to be promoted to an Associate Professor position as expected,[2] the Association and Dr. Patricia Donohue (Dr. Donohue), the President of the College, met to discuss the failure of Dr. Panen's recommendation of promotion to the Board of Trustees. After the meeting, Dr. Donohue notified the College's Board of Trustees Human Resource Committee by memo dated July 2, 2004, that she was recommending Dr. Panen for promotion. Despite her recommendation, Dr. Panen received a letter from the College that the Committee had decided not to promote him to Associate Professor. On August 25, 2004, the Association followed the grievance procedures and filed grievance # 03–01 on behalf of Dr. Panen regarding the College's failure to promote him to the rank of Associate Professor. The grievance stated:

[t]he College agreed to recommend all bargaining unit members for promotion who were recommended by the promotion committee. They failed to do this and sent Dr. Murali Panen a letter stating that he was not recommended for promotion. When asked why Dr. Panen was not recommended, we were told that he was recommended. When we produced the letter, the College acknowledged that they did not recommend Dr. Panen. At a meeting held on June 29, it was agreed that the College would recommend Dr. Panen for a promotion to the Human Resources Committee of the Board of Trustees. Dr. Panen was not promoted at the next Board of Trustees meeting, August 24.

Suggested Resolution of Grievance:

Promotion to the rank of Associate Professor, with all the rights and privileges of the rank, including the promotion increase of $1100.

(Reproduced Record at 172a.) Pursuant to the CBA, a written response was due on September 9, 2004.

Because the Association had not heard from the College by September 15, 2004, Anna Mary McHugh, the President of the Association, contacted Dr. Donohue regarding Dr. Panen's grievance, and advised her that because Dr. Panen had not received a response to the grievance, it was deemed to be resolved in favor of Dr. Panen and/or the Association, and "We expect that Dr. Panen will be notified in writing of his promotion and its attendant increase by Wednesday, September 22, with a copy of said notification sent to me." However, that was not the case, and the College responded to the grievance on September 21, 2004. The Association again requested that Dr. Panen be promoted and the College take action by October 11, 2004, or the Association would take legal action. Again, the College responding by stating that it had complied with the grievance when Dr. Donohue had met with the Association and she made her recommendation to the Board of Trustees.

On October 29, 2004, the Association filed grievance, # 04–02, this time alleging that the College did not respond to Dr. Panen's grievance in accordance with the timelines set forth in Article 6.4 of the

2. Pursuant to a Memorandum of Understanding (MOU) between the College and Association, dated December 18, 2003, and signed by both parties, the faculty members were to provide the College with their intent to apply for promotions and the College President was to recommend to the Board of Trustees that "all recommended candidates be promoted." (Reproduced Record at 157a.) Dr. Panen's name was initially included on a promotion list in two different memos dated May 5 and May 10, 2004, which indicated that he was going to be promoted to the rank of Associate Professor. However, in a memo dated May 12, 2004, his name was excluded from the list of individuals who were to be promoted without any explanation.

CBA. Again, the Association requested that Dr. Panen be promoted to the rank of Associate Professor. The College responded by stating that it stood on its previous position, and the Association requested grievance arbitration. Sustaining the grievance, the Arbitrator determined that both the testimony and the evidence supported the Association's position that the College did not reply in a timely manner to grievance # 03–01, and pursuant to the CBA, the grievance had to be resolved in favor of the grievant.

The Arbitrator also addressed the College's argument that he did not have the power to promote Dr. Panen as a remedy and only the Board of Trustees had that power, explaining as follows:

[T]he [College] claims that no one, other than the Board of Trustees can promote faculty members. Such is not the case. Exhibit C of the CBA places a promotion procedure within the four corners of the CBA. Further, it provides for automatic promotion recommendations and more importantly, **automatic promotions** under certain circumstances. Certainly any arbitrator interpreting provisions of the CBA, including Exhibit C, who found a violation thereof, could order a remedy for promotion. Secondly, the [College] provided many exhibits to show a timeline to justify its position. One such document, cited above, is the Memorandum of Understanding signed on 12/18/03. A Memorandum of Understanding (MOU), jointly signed by the parties becomes an integral part of the CBA. The MOU, Section 6 requires the college to endorse all candidates. Evidence shows that on May 12, 2004, the college failed to recommend all candidates as required by the MOU. While this violation was eventually corrected, it placed the grievant in jeopardy, and singled him out. Not being considered in the normal promotional process as a recommended candidate certainly could have resulted in a different treatment by the Board of Trustees. Therefore an arbitrator's decision on the merits of the grievance 03–01 certainly could have sustained the remedy requested by the grievant. (Emphasis in original.)

(Reproduced Record at 11a–12a.) The College filed with the trial court a petition to review and vacate the arbitration award. The trial court denied the petition after finding 1) that the Arbitrator's decision drew its essence and was rationally derived from the CBA; 2) the issue submitted to the Arbitrator was encompassed with the CBA and was within the Arbitrator's jurisdiction; and 3) the Arbitrator's decision did not strip the College of its power to discharge its core functions as a public employer. This appeal by the College followed.

The issues in this case are: 1) the proper remedy for failing to file an answer to a grievance; and 2) whether that remedy was derived from the essence of the CBA. Addressing the remedy first, Section 6.4 of the CBA sets forth that if a grievance is not timely answered or never answered, "the said grievance will be **deemed to be resolved** in favor of the grievant." Essentially, that section provides a default remedy *in favor of a grievant* when the College does not timely respond to a grievance or a grievance goes unanswered that has been filed by the Association. In other words, when no response is received by the deadline stated, the grievant wins the requested remedy. So it behooves the College to respond to a grievance in a timely fashion.

 As to whether that remedy which the Arbitrator, in fact, awarded was de-

rived from the essence of the CBA[3] is determined by considering whether it was rationally derived from the CBA.[4] Clearly, it was. As just stated, the CBA specifically provides that if the College fails to provide an answer at the second step of the grievance procedure within 10 working days, then the grievance shall be deemed resolved in favor of the grievant or the Association. Despite the College's contention that it believed that it did not need to respond to grievance # 04–02 because it was merely "a reiteration of what had transpired as the result of a meeting, discussion and settlement of the underlying grievance of Dr. Panen" (College's brief at 31), the Arbitrator found that the College did not timely respond to grievance # 03–01. (*See* Reproduced Record at 11a.)

The College then argues that the Arbitrator's award was not rationally derived from the CBA because he exceeded his authority when he directed the College to promote Dr. Panen. It argues that **only** the Board of Trustees can promote an employee, and the most the Association could have achieved by fully litigating grievance # 03–01 was what the College agreed to do in the settlement of that grievance—recommend Dr. Panen for promotion by the College's president which was done. First, while this may have been a substantial argument if the College had responded to the grievance, it ignores that when Employer failed to respond to the grievance, the CBA provided that the "grievance shall be resolved in grievant's favor."

Second, the College ignores that the Board of Trustees is the governing body of the College and bound by the College's actions or inactions within the scope of their authority. When the College failed to respond to the Association/Dr. Panen's grievance, the Board of Trustees, accordingly, was bound by that inaction. The net

3. The role of the appellate court in reviewing an arbitrator's award is the "essence test." As explained by this Court in *Philadelphia Housing Authority v. American Federation of State, County and Municipal Employees, District Council 33, Local 934*, 900 A.2d 1043 (Pa.Cmwlth.2006), "the essence test requires a two-part inquiry. First, the court shall determine if the issue, as defined, comes within the terms of the CBA and second, if it does, whether the award is rationally derived from the CBA. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *State System of Higher Education v. State College University Professional Ass'n*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999).

4. The College argues that the essence test has been modified by our Supreme Court by allowing for an exception based on whether the Arbitrator's award strikes at the very "core function" of the public enterprise that would deprive the public employer of its ability to discharge its essential functions. In this case, it contends that the Arbitrator's award violates public policy because it has stripped the College of its power to discharge its core functions as a public employer, including decisions as to who should be promoted. It relies on *Greene County v. District 2, United Mine Workers of America*, 578 Pa. 347, 852 A.2d 299 (2004), for the proposition that our Supreme Court carved out an exception to the essence test "in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its functions." *Id.* at 361, 852 A.2d at 308. However, in every case this Court has dealt with the "core function" test, including *Greene County*, the facts have been limited to termination of public employees and none have dealt with the promotion of a public employee. In any event, the "core function" test is not at issue in this case, but the effect of not answering the grievance is.

result here is no different that if the College failed to answer a complaint in a court of law and a default judgment was entered. In such an instance, the Board of Trustees could not say that it was not bound by the default because it did not approve the remedy that would flow from the default. Similarly, in this case, the College cannot say that the Arbitrator did not have authority to promote Dr. Panen just because it did not approve the promotion.

Finally, and least important, contrary to the College's allegation that the Board of Trustees is the only entity that may promote faculty members, as the Arbitrator pointed out, there are other circumstances under the CBA where another entity other than the Board of Trustees may promote a faculty member. For example, Exhibit C of the CBA regarding Promotion Procedures provides:

> Members of the bargaining unit who have been recommended for two (2) consecutive years by the Promotion Committee but not promoted will, if qualified as determined by the Promotion Committee, *be automatically recommended* in the third year of application. If these recommendations exceed one (1) person, the most senior member of those recommended will be *automatically promoted.* This promotion will not be part of the total number of vacancies declared by the Board of Trustees and will not exceed a total of one (1) in any academic year. (Emphasis added.)

(Reproduced Record at 135a.) Under this section, the Board of Trustees has no involvement. Obviously, the Board of Trustees is not the **only** entity which can promote faculty members.

Consequently, because the evidence of record supported that the College did not respond to the grievance filed, and the remedy provided in Section 6.4 provided for Dr. Panen to be promoted to Associate Professor, the Arbitrator's remedy drew its essence from the CBA. Accordingly, the order of the trial is affirmed.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this *4th* day of *January,* 2007, the order of the Court of Common Pleas of Luzerne County, dated March 22, 2006, is affirmed.